SAMUEL, Judge.
Plaintiff-appellant seeks an increase in the amount awarded for personal injuries she sustained as a passenger in a two-car collision. That is the only issue before us on this appeal. Liability is stipulated. The jury award, which was made the judgment of the court, was in the sum of $1,537, of which amount $537 was for medical expenses.
Medical evidence relative to plaintiff’s injuries was given by Dr. Vernon R. Kroll and Dr. Kenneth Saer. Lay testimony relative to injuries was given by plaintiff (a guest passenger), and the driver of the car, Mrs. Mildred C. Deboutte (plaintiff’s sister-in-law).
Dr. Kroll testified (by deposition): He first saw plaintiff two days after the accident, on August 19, 1977. She complained of injuries to her back and knees and denied prior difficulties in these areas. He diagnosed her injuries as contusions of both knees with swelling of the right knee and *541 spasm of the lumbosacral area of the back. X-rays of both knees showed no evidence of fracture, dislocation, bone disease or joint abnormality. Treatment consisted of physiotherapy (heat, massage and semisound) and prescriptions for the relief of pain and muscle spasm. Physiotherapy was conducted by trained personnel in the doctor’s office. He did not see her on each occasion, but did see her ten times between August 19, 1977 and January 31, 1978. Plaintiff was discharged November 1, 1977. She returned January 13, complaining of soreness in the left knee. No swelling was evident, but because of these complaints she was referred to Dr. Kenneth Saer, an orthopedic specialist.
Dr. Kroll further testified: Plaintiff returned for a last visit on January 31, with discomfort in the knees in flexion and extension, more on the left. At that time there was no evidence of laxity of the knees, and no swelling. No treatment was necessary. He agreed with Saer’s conclusion that the complaints were referable to chondromalacia, which is a roughening of the cartilage surface of the back of the kneecap. Prior to her discharge on November 1, her right knee and left knee were aspirated,[1] each on one occasion. The right knee was aspirated on September 6, 1977 when she had crepitation and swelling in that knee. That knee improved but on September 30, 1977 she complained of the left knee, so that also was aspirated. Plaintiff was placed on a steroid (aristocourt) for a week prior to her discharge on November 1, 1977. He had treated plaintiff in 1969 for aching discomfort in the left knee. As a result of an accident in October, 1969 plaintiff had complained of neck pain and four days later of knee pain. He was unable to give a prognosis of future knee problems plaintiff might experience after his deposition was taken.
Dr. Saer testified: He saw plaintiff on one occasion, January 17, 1978 at the request of Dr. Kroll. His examination was limited to the left knee, using the other knee for comparison. X-rays were normal and showed no evidence of arthritis. She had symptoms and findings of cracking in the knee with motion which indicated a chondromalacia which is a mild form of arthritic change not seen on the x-ray. He was of the opinion there was some degree of fissuring, cracking, or fraying of the joint surface. Typical symptoms of chon-dromalacia are some discomfort with squatting or weight bearing when the knee is bent going up or down steps. Pain would be a nuisance type. Crepitus describes the sound or rough feeling as a piece of sandpaper moving over an object. It does not necessarily mean there is any discomfort associated with it. Chondromalacia most commonly occurs with the aging process but can be produced by injury. Treatment is to avoid squatting, stooping and climbing and the use of aspirin or bufferin.
On cross examination Dr. Saer stated plaintiff told him she had no previous discomfort or injury to the knee and did not mention her accident nine years earlier. His examination was essentially negative except for mild crepitus. He concluded she had a normal knee for a 56 year old lady. She should not require much in the way of pain medication and nothing other than aspirin or bufferin would be advisable. While he thought she walked with a limp, he would not expect a limp from the history and findings of his examination. A brace would be neither helpful nor advisable, although some type of support (such as elastic) might be helpful, but he did not think it necessary. He was of the opinion plaintiff’s condition did not require treatment.
Mrs. Mildred C. Deboutte, plaintiff’s sister-in-law and the driver of the car in which plaintiff was a passenger at the time of the collision in suit, testified that plaintiff struck her head on the windshield and her knees on the dashboard. The witness was too upset to get out of the car but plaintiff got to a telephone and called for help. *542 Plaintiff’s knees were black and blue. At the present time plaintiff is only able to bowl once a week. They bowl every Friday for 1 hour and 45 minutes in the same league.
Plaintiff testified: She hurt her head, back and knees. The bump on the head lasted for a day or two, but headaches persisted longer. She was unable to get an appointment with Dr. Kroll, her family physician, for two days. He treated her knees with painful injections and sent her home with instructions to use ice packs on the knees and stay in bed. She denied prior trouble with her knees and stated she can’t kneel in church, can’t wear dresses, and only bowls once a week, although she used to bowl twice a week. She can’t climb stairs or stand up for long periods. She is in constant pain, even waking up at night. Before the accident she did all of her own housework, but now her daughter has to help because of the pain in her knees and back. She takes Valadol, Bufferin and Tylenol every two hours for the knee pain. She also wears braces because it helps with her knees, although it was not recommended by the doctor.
It appears to us the medical evidence did not establish to the jury’s satisfaction that plaintiff had a serious knee injury and we find no manifest error in such a conclusion. Her present complaints are concerned almost entirely with the left knee and Dr. Kroll’s testimony establishes an injury to that knee prior to the accident in suit. Yet she told Dr. Saer she had not had that prior injury. In addition, although plaintiff complains of constant pain severe enough to require medication every two hours, which is considered unnecessary and too strong by the doctors, wears a knee brace of which Dr. Saer disapproves, and complains of inability to stoop, climb stairs and stand for long periods, she is able to function in a bowling league on a regular basis. Dr. Saer also concluded plaintiff had a normal knee for a lady of her age.
While the award of $1,000 for pain and suffering may seem low, under the circumstances we cannot say the jury abused its much discretion in determining the amount of this award.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Injecting local anesthetic beneath the skin and slipping a needle behind the kneecap he withdrew 4 cc’s of fluid.